JOHN J. QUINN et al. *vs.* THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON.

1. Where work is done in the execution of a public trust, for the public benefit and within the scope of city authority, neither the person performing the labor nor the city authorities will be liable for damages resulting therefrom, if the work is done with due skill and caution.

2. If the authorities of a municipal corporation are authorized by an act of the legislature to vacate, alter and relay streets, such authority extends only to public streets or highways, and will not give authority to alter any road owned by a turnpike company or other private corporation.

3. A petition to city authorities to curb and pave a street will not estop the petitioner from showing, in an action for trespass, that such curbing and paving was done outside of the boundaries of the street. Per ELMER, J.

----

This was an action of trespass, brought in the Passaic Circuit Court, and tried at the December Term, 1856.

On the trial, a special verdict was taken for the plaintiffs, questions of law being reserved for the advisory opinion of this court. The facts sufficient for an understanding of the case appear in the opinions delivered.

The cause was argued at June Term, 1857, before the CHIEF JUSTICE, and Justices ELMER, POTTS and VREDEN-BURGH.

*A. S. Pennington*, for the plaintiffs.

*Williams* and *Barkalow*, for the defendants.

The CHIEF JUSTICE. The action is brought to recover damages for a trespass, committed by the defendants, in digging up the earth in front of the plaintiffs' houses in the city of Paterson. The injury complained of was occasioned by acts done by the city authorities in grading and paving a public street. The work being done in the execution of a public trust and for the public benefit, and being within the scope of the city authority, and there being no suggestion that it was not done with due skill and caution, the defendants are not liable, if in point of fact the *locus in quo* was within the limits of the street. *The Governor, &c.,* v. *Meredith,* 4 *T. R.* 794; *Radcliff's Executors* v. *Mayor, &c., of Brooklyn,* 4 *Comst. R.* 197; *Tinsman* v. *The Belvidere Delaware Railroad Co.,* 2 *Dutcher* 148.

The plaintiff complains, however, not of an incidental injury resulting from work done confessedly within the limits of the highway; but he complains of a direct injury occasioned by the act of the defendants in breaking and entering his close without the limits of the highway, done under color of grading and curbing the street. And the only question which the court are called upon to decide is, whether the alleged trespass was committed within the limits of the highway. The material facts are all settled in the case, and it remains for the court to settle the laws applicable to those facts.

The plaintiff's lot is situate on the west side of what is now Main street, in the city of Paterson, over half a mile south of the court-house, as appears by one of the exhibits, in the case. This part of Main street was formerly the road of the Paterson and Hamburgh Turnpike Company. The verdict finds that Quinn's property was bounded, in part, by the west line of the Paterson and Hamburgh Turnpike road. The case further shows that a map was pro-

Quinn v. City of Paterson.

duced upon the trial, which is marked as an exhibit in the cause, and that the line A B, marked on said map, is the west line of the said turnpike, as found by the jury; that the line C D, on said map, is the west line of Main street, as fixed by the Allen survey, and cuts through all four of plaintiffs' houses; that the line E F is the line of the curb, as set by the city, the setting of which is part of the trespass complained of. From reference to this exhibit and to the case it appears that the jury have settled the location of the Paterson and Hamburgh turnpike road, and of the east line of the plaintiffs' lot, which is bounded upon that road. The work done by the city is west of that line, and consequently out of the limits of the turnpike road and within the plaintiffs' close. It further appears that, by the Allen survey, the plaintiffs' houses encroach upon the highway, and that all the work done by the city was within the limits of the highway, assuming that survey to fix the true position of the street. Was, then, the position of the street changed by the Allen survey? Was that proceeding competent to change the location of the turnpike road?

By the charter of the turnpike company, granted in 1806, (*Pamph. L.* 602,) the company were authorized to acquire not a mere right of way, but the title to the land over which the road passed; and by the provisions of the act they became seized of the same estate in the lands which the owners held in the same. By a supplement to their charter, approved March 18th, 1851, the turnpike company were empowered to sell or dispose, by lease or otherwise for a term of years, of that portion of their road from Acquackanonck landing to Paterson, to end at some point near the court-house, in the town of Paterson, for the purpose of constructing a plank road on the same.

In pursuance of that authority, the turnpike road was at that time transferred to, and has since been worked by the Paterson and New York Plank Road Company, until the 12th of February, 1855. By an act of the legislature,

approved 12th February, 1855, all that part of the plank road lying within the city of Paterson was vacated, and dedicated to the public use, and declared to be under the control of the municipal authorities of said city, as fully, to all intents and purposes, as other streets of said city.

The Allen survey, under which it is claimed that the location of the street was altered, was made by virtue of an act of the legislature, passed on the 25th of March, 1852. It authorized the president and council to take up and vacate any of the streets or highways of said city, and to relay the same. At the date of that act, and at the date of the Allen survey, the road in question was private property, owned by a corporation having title to the land, and authorized to receive tolls from persons passing over it. It was not a street or highway of the city, within the contemplation of the act of 1852. The location of a road, the title to the soil of which was in a corporation, could be changed by no such process. The true location of the turnpike road was a question of location or boundary between adjoining proprietors, viz., between the owners of the turnpike, upon the one hand, and the adjoining proprietors, on the other. At the time of the Allen survey there was no surrender, actual or constructive, of this road by the corporation to the public. On the contrary, the plank road company were in the actual possession and control of the road, with the right of taking tolls. As against the plank road company, the city corporation would have had no power to deprive them of their property in the road. As against the adjoining proprietors, the city would have had no power to deprive them of their land for the benefit of the road company. The act of 1852, authorizing the city to take up and vacate any of the streets or highways of said city, was not designed to affect, nor if so designed could it affect, the location of the turnpike road in front of the plaintiffs' dwellings.

It is unnecessary, in my judgment, for the decision of

this case, to express any opinion upon the true construction and operation of that statute, as applied to the public streets and highways of the city.

In accordance with the terms of the case agreed on, judgment should be entered for the plaintiffs upon the verdict.

ELMER, J. It is not disputed but that the special verdict shows the plaintiffs entitled to recover the damages assessed, unless the defendants were justified in doing the acts complained of by the facts and circumstances relied on by them. The alleged trespasses were committed by placing curbstones on the property of plaintiffs, in what the authorities claim to be Main street, within the limits of the city of Paterson. This street is a part of the Paterson and Hamburgh turnpike, constructed under an act of incorporation passed in the year 1806, by virtue of which the company became the owners of the soil, and maintained and used the road until the year 1851, when the Paterson and New York Plank Road Company was incorporated, and became the proprietors of that part of the turnpike road now in question, and so continued until February 12th, 1855, when an act was passed providing that all that portion of said plank road lying within the city of Paterson be vacated and dedicated to the public use, and thereafter under the control of the municipal authority of said city, to all intents and purposes, as other streets of said city.

A supplement to the charter of the city was granted in the year 1852, the fifth section of which enacts " that the president and council of the city of Paterson be authorized to take up and vacate any of the streets or highways of said city, and to relay the same; and, for that purpose, it is hereby made the duty of the said president and council to cause a survey of the streets of said city to be made, and to erect, at suitable places in each street, permanent monuments of such survey, and to cause a map

of such survey to be made, which map, or a copy thereof, with a return describing said survey and map, with its courses, distances, and monuments, shall be recorded in the office of the clerk of the county of Passaic, in the book of records of highways, which return, or a duly certified copy thereof, shall be evidence of the location of the streets so surveyed and returned ; and when any such street or highway shall be so taken up, vacated, or relaid, the same shall not be again taken up, vacated, or relaid by the said president and council, except by the request of the owners of two-thirds of the property fronting on both sides of such street."

Claiming to act under this section, a survey of the streets of the city, called the Allen survey, was duly made and recorded, and monuments were erected, which was ratified by an ordinance, duly passed and published, in the year 1853. Among the streets thus surveyed and located, was that part of the aforesaid plank road within the city called in the survey and return, and usually designated as Main street. The lines of this survey departed materially from the lines of the plank road, where it crossed the plaintiff's property, which bounded on the plank road. The acts complained of were such as were necessary to curb the sidewalk of the street, as located by the aforesaid survey, and to bring it to the prescribed grade and were done outside of the limits of the original turnpike and plank road.

It was first insisted, for the plaintiffs, that the above quoted section of the supplement of 1852 gave no authority to the officers of the city to do anything more than to ascertain the actual lines of the existing streets of the city ; and if it afterwards appeared that in fact they deviated from those lines, as they previously existed, and thus laid out the street upon the property not before within it, the survey afforded no justification of any acts in opening, grading, or curbing such streets. In my opinion, the power was meant to be much broader than this. The

Quinn v. City of Paterson.

president and council are empowered to vacate and relay, which I think implies a clear right to relay the new street so as to serve the same public use as was intended to be provided for by the old one, and so as substantially to make it the same street, either by preserving its precise original location, or by deviating from it, as might appear most expedient. It was power similar to that vested in the ordinary surveyors of the highways; and the survey and return, like that made by them, is required to be recorded in the office of the clerk of the county, in the book of records of highways; and said return is made evidence of the location of the street. I think the fair import of the section is, that when the return shall have been duly recorded, no one should be permitted to dispute the fact, that it correctly described the true location of the street.

Whether the legislature had the constitutional power to authorize private property to be taken in this manner, without providing for compensation to the owner, it is not necessary now to decide, and no opinion is meant to be expressed on that question.

But if it be admitted that the Allen survey of the different streets of the city concludes the owners of property affected, and entitles the authorities of the city to grade, curb, and pave them, as they were therein laid out, it remains to inquire whether the plank road was subject to that power. If it was not, the survey, so far as this case is affected, is a mere nullity. That the president and council had no power at that time to open a new street, is admitted. The fifth section of the supplement applied only to the existing streets and highways. Was this plank road, then, a street or highway within the true intent and meaning of that section? I am clearly of opinion it was not. The property of the land included in the road was vested in the plank road company, whose title could not be transferred to other and different land. If it was the true construction of that section, that the sur-

vey was meant to be confined to the actual boundaries of the road or street, then the argument for the defendants, that as this road was within the city limits, and was usually designated as one of the streets of the city, it was embraced within the powers therein conferred, would be very strong. But this construction would destroy their justification, it being found by the special verdict that the place where the alleged trespasses were committed was outside of those boundaries. But if, as I hold, the actual location might be changed, then it is clear such a power is not applicable to the case of a road or street, the property of which was vested in a private corporation. This case differs entirely from that of *The State, Townsend prosecutor,* v. *Jersey City,* 2 *Dutcher* 444. The act passed in 1855, and before quoted, proceeds upon the principle that up to this time the plank road was not under the control of the city.

By the 21st section of the original charter, granted in 1851, the city council was authorized to survey all such roads, streets, alleys, and public passageways, which had been, or at any time afterwards might be, dedicated to the public; and it is directed how they may be graded, paved, or planked. Following this was the supplement in question, which refers to the streets or highways of the city, plainly meaning highways regularly laid out and streets which had been dedicated to public use before subjected to the control of the council. The plank road was differently situated, and never had been subject to be surveyed, graded, paved, or planked, by direction of the city authorities, and in my opinion never was, until after the act of 1855.

It is found by the special verdict, that the ordinance for paving the gutters, grading and curbing the sidewalks of Main street, by virtue of which the alleged trespasses were committed, was passed upon petitions for that purpose, signed by some of the plaintiffs, one dated March 23d, and the other April 5th, 1855; and this is urged for

the city, as estopping those plaintiffs from claiming damages. But these petitions were presented after the plank road had been expressly placed within the control of the council. There was no evidence of any actual notice to the plaintiffs, or their father, under whom they claimed, that the Allen survey embraced this road; and if the opinion before expressed, that that survey, so far as it affected this road, was null and void, is correct, the record cannot be considered as notice to them of the fact that it did. Those petitions must therefore be regarded as petitions to pave, grade, and curb the sidewalk, not as it was established by the Allen survey, but as it existed along the course of the plank road. Upon the facts set forth in the special verdict, I am of opinion that the plaintiffs are entitled to judgment, and that the Circuit Court should be advised accordingly.

Justices POTTS and VREDENBURGH concurred.

CITED in *State* v. *City of New Brunswick*, 3 *Vr.* 550; *State* v. *Morristown*, 5 *Vr.* 448; *Trenton Water Power Co.* v. *Raff*, 7 *Vr.* 340; *Chambersburgh* v. *Manko*, 10 *Vr.* 500.